## Columbia Gas of Pennsylvania, Inc. v. Obsharsky

*Clarence A. Crumrine,* for plaintiff.
*John E. Costello,* for defendants.

GLADDEN, J., July 28, 1972.—We have before us a motion for summary judgment filed by plaintiff, Columbia Gas of Pennsylvania, Inc. In considering this motion, we have read the record; the deposition of Veronica Obsharsky; the affidavit of Cynthia Kinder, plaintiff's employe; and we have conferred with counsel and considered their briefs.

Before a motion for summary judgment can be granted, there must be no genuine issue of material fact. This is the law of Pennsylvania and is so well recognized that no citation of authority is necessary.

Here, we are concerned with the installation of a furnace-air conditioning unit in the home of defendants, Nicholas and Veronica Obsharsky, by Salvio Heating and Air Conditioning. A representative of plaintiff, Columbia Gas Company, had the initial contact with defendants and according to our information prepared the agreement. The agreement was later assigned by Salvio to Columbia Gas Company and the notices and documentation required by the Home Improvement Finance Act were sent to the Obsharskys. On June 30, 1971, plaintiff notified defendants of the assignment. There is no statement that a completion certificate had been furnished by Salvio nor is there anything specific with respect to the actual date on which the installation was completed.

Here, we are confronted with the question as to whether or not the Home Improvement Finance Act of August 14, 1963, P. L. 1082, 73 PS §500-101, et seq.,

has been strictly complied with and, if not, whether there exists a material issue of fact which would bar summary judgment. The HIFA requires that certain specific steps be taken in strict compliance with the act before the buyer can be cut off from asserting against an assignee a claim which he may have had against the contractor. In this case, defendants entered into an agreement to have a furnace installed. The deal was "brokered" by an employe of plaintiff, who apparently placed the installation with Salvio Heating & Air Conditioning. Defendants claim that they had no discussion with Salvio prior to signing the contract. They allege that the contract was signed by them in the presence of Don Miller, a salesman for plaintiff, and when they signed it Salvio was not present nor did the name Salvio appear on the document. At some later time, defendants learned that Salvio was the installer "selected" by plaintiff.

At this point the important aspect of this matter is not the events which surrounded the signing of the contract on May 29, 1970, although they may become significant at some later proceeding. We are concerned with the apparent failure of defendants to comply with the requirements of the HIFA.

The contract was purportedly signed on May 29, 1970. A notice of right of rescission was sent to defendants giving them until midnight, June 3, 1970, to cancel the transaction. On a date not yet ascertained, it was assigned to plaintiff. Plaintiff sent an undated notice of assignment to defendants on what appears to be legally adequate form. By affidavit we are told that this mailing occurred on June 30, 1970.

We are disturbed when we attempt to apply items 2 and 3 set forth under "NOTICE" to the facts before us. They read as follows:

"2. If the goods and services described in or in an

enclosure with this notice have not been delivered and satisfactorily performed by the contractor, or

"3. If the contractor has not fully performed all his agreements with you, you must notify the Assignee (Columbia Gas of Pennsylvania, Inc.) in writing at the address indicated in, or in an enclosure with, this notice within fifteen days from the date of the mailing of this notice. Otherwise, you will have no right to assert against the assignee any right of action or defense arising out of the sale which you might otherwise have against the contractor."

The deposition of Veronica Obsharsky is unclear as to when the installation was completed but according to her it did not take place until mid-June or July 1970. If this is so, how could defendants be expected to know if the fixture would satisfactorily perform or if the contractor would fully perform all his agreements so as to put the buyer in a position to give notice to the assignee within the 15-day period which began to compute on or about June 30, 1970. This would not be possible if the installation was incomplete. It is clearly violative of the spirit of the HIFA, sec. 500-208. Under these facts, as they are now presented, there would be an unfair burden placed on defendants and an unfair advantage given to plaintiff.

The case of General Electric Credit Corporation v. Borosh, 50 D. & C. 2d 377 (1970), considers this problem. In that case, buyers allege that the assignee knew that the work was not completed at the time it sent notice of the assignment of the contract. In disposing of this allegation, the court said, on page 382:

"The testimony refuted defendants' statement that plaintiff knew the work was uncompleted when the assignment of the contract was consummated after receipt by it of the completion certification."

We interpret this to mean that before the advan-

tages of the HIFA extend to the assignee, the installation must be completed.

At this time, we have no way of knowing whether or not the installation was actually complete when the assignment was mailed, or if defendants were in a position where they could reasonably comply with the 15-day notice. This is the issue of fact yet to be resolved.

For that reason, we enter the following

### ORDER

And now, July 28, 1972, the motion for summary judgment is denied, and unless exceptions are taken within the required period, the prothonotary is directed to appoint a board of arbitration to hear and decide the issues.